No. 5339.

GEORGE L. GETTWERTH AND WIFE VS. TEUTONIA INSURANCE COMPANY.

In the organization of juries, it is not necessary that the sheriff should furnish a list
    of all persons liable to jury duty, and put them in the jury box *every* December.
    The box must be exhausted before being refilled.
Where a policy of insurance stipulates for payment of losses sixty days after adjust-
    ment, and the assurers make reasonable efforts to effect an adjustment, they will
    not be liable for interest from the expiration of the sixty days, but only from
    judicial demand.

APPEAL from the Fifth District Court, parish of Orleans. *Cullom, J.*
Jury trial. *Braughn, Buck & Dinkelspeil*, for plaintiffs and appellee.
*Hudson & Fearn*, and *B. R. Forman*, for defendants.

The opinion of the court was delivered by SPENCER, J.

The plaintiffs bring this suit to recover of the defendant the amount
of a fire policy of insurance for two thousand dollars, to wit: " on stock
consisting of wines, liquors, confectionery, on soda-water stand and store
fixtures, fifteen hundred dollars; on furniture belonging to saloon five
hundred dollars, contained in the two-story frame slated house on
south-east corner of Canal and Liberty streets."

It seems that on the morning of first of August, 1872, about five
o'clock, an adjoining building took fire, which communicated to the
establishment of plaintiffs above described. The establishment con-
sisted of two rooms fronting on Canal street, and one in rear, on the
ground floor, and four rooms and a cabinet on the upper floor. The
two rear rooms on the second floor and the cabinet were used in con-
nection with the establishment below as private dining rooms, etc. On
the lower floor the corner room was used as a confectionery, and the
other Canal-street room as a bar-room, and the third room in rear of
the two as a saloon, with tables, sideboard, mirrors, curtains, etc.

The answer of the defendant admits the execution of the policy, and
generally denies plaintiffs' allegation. It specially alleges that plaintiffs'
estimate of loss is grossly exaggerated, and that they have sworn
falsely to said loss, with the view and design of defrauding defendant,
and have thereby forfeited all claim under said policy.

The case was tried by jury. The defendant challenged the array of
jurors for the reason that the law required of the sheriff of the parish

of Orleans, "in the month of December, to furnish a list of all persons liable to jury duty residing within the limits of the parish of Orleans." Revised Statutes, sec. 2144.

"Whenever a jury is to be drawn, it shall be the duty of the sheriff to draw from the jury box the names of the persons, and continue so to draw for each successive jury, until all the names in said box have been drawn out, and no person shall be required to serve a second time upon the jury until all the names have been drawn from the box, and whenever the box shall be emptied the sheriff shall return all the names upon the jury list into the jury box to commence a new drawing." *Ibid,* sec. 2146.

Paragraph 2125 declares the qualifications of a juror "to be a duly qualified voter." Defendant contends that under these provisions it was the duty of the sheriff, every December, to furnish a list of all persons liable to jury duty, and put them in the box anew, regardless of whether the box had been exhausted or not. That as the box had not been filled since 1870, and many persons had become of age, or been naturalized, and therefore liable to jury duty since then, the array was illegal. We think that both the text of the law and its reason repel this view of the case. It would be impracticable to carry it out. It would necessitate an annual census or registration of the voters of the parish of Orleans. The court properly overruled the challenge. As stated, the case was tried before a jury, who found $1500 for plaintiff, with legal interest from first October, 1872. The record is very voluminous. The testimony occupies about four hundred and fifty pages of the transcript. We have examined it with as much care as we could give it. It all relates to the questions as to the extent of the fire in the building, the quantity and quality of stock, fixtures, and furniture, and their value, in the house at the time of the fire, and the extent of the damage and loss caused by it. It is impracticable to enter into details of the evidence in this opinion. There is between the testimony of plaintiffs' witnesses and those of defendant irreconcilable contradictions. But there are some salient and principal points which seem to us to be established.

First—The insurance company before accepting the risk for two thousand dollars sent its inspector to look at the premises and notice the stock to be insured. The testimony shows that this inspector expressed himself entirely willing to take a risk of two thousand dollars on the property, and some of the witnesses say he suggested making the policy for a larger amount, say three thousand dollars. However this may be, he must have reported to his company favorably on the risk for two thousand dollars.

Second—The evidence satisfies us that the plaintiffs' stock, fixtures,

and furniture did not diminish between the date of the policy and that of the fire. The evidence of numerous witnesses, who had apparently good opportunities of knowing, shows that plaintiffs conducted a prosperous business in their line, with daily receipts ranging from forty to one hundred dollars per day, which must of necessity have required a considerable stock.

Third—There is no pretense that any part of the property insured had been fraudulently removed, or that plaintiffs were guilty of any complicity in starting the fire.

Fourth—We are also satisfied that the fire did not reach either the confectionery room or the bar-room, and that whatever damage·was done to their contents was from water and breakage. In the saloon and in the upstairs dining·rooms there seems to have been considerable damage done.

Fifth—Plaintiffs offer in evidence and swear to a list and the value of their stock, fixtures, and furniture, and fix the value thereof at $2775 77. We incline to the opinion that the values are fixed too high. We think under the evidence it is safer to fix it at $2000, the amount which the defendant insured it for. True, many of defendant's witnesses fix it much lower, but it does not come with good grace from the company to expect this court, amid the conflicting evidence in this case, to put it at less, especially as it was paid its premiums at that value. Besides, we think the weight of evidence will justify that amount.

Sixth—We are also satisfied that the value of the property saved was fully one-half of that insured, and should be deducted from the amount of the policy. This would leave the amount due the plaintiffs by the company one thousand dollars.

It is proper to state that the plaintiffs carried on their business exclusively on the cash plan, and kept no kind of books. Under these circumstances it would be unreasonable to require or expect that exactness of proof which more extensive establishments can usually give. We think they have rendered it reasonably certain that their property insured was worth two thousand dollars, and that their loss was as much as one thousand.

The policy provides that the loss shall be paid within sixty days after adjustment. The jury gave interest from first of October, sixty days after the loss. We think this is erroneous, both under the terms of the policy, and in equity. The company seems to have used reasonable efforts to arrive at an adjustment, but the plaintiffs demanded the whole amount of their policy, which the company did not owe. We think interest in this case can be allowed only from judicial demand.

In conclusion, we do not think the plaintiffs have overestimated their goods with intent to defraud the defendant. In cases of this kind it

would require most cogent and manifest evidence of such an intent, to induce the court to apply such a rule.

We think the charge of the judge *a quo* to the jury was substantially correct, and that defendant suffered no prejudice therefrom.

It is therefore ordered, adjudged, and decreed by the court that the judgment appealed from be avoided and reversed; and it is now ordered, adjudged, and decreed that the plaintiffs, Mrs. Dina Hulsmann and her husband, George L. Gettwerth, do have and recover of the Teutonia Insurance Company of New Orleans the sum of one thousand dollars, with legal interest from judicial demand, and that plaintiffs pay costs of appeal, and defendant those of the lower court.