Plaintiff, James A. Ware, instituted this suit against the defendant, The American Druggists' Fire Insurance Company, to recover the sum of $243.00, alleged to be the cost of repairing the premises, designated by the Municipal No. 3245 Gentilly Avenue, in New Orleans, plus 10% of the amount of the loss as a commission or handling charge for the contractor. In addition thereto, plaintiff claims 12% ($32.08) of the amount of the loss as a penalty and a reasonable attorney's fee, in conformity with the provisions of Act 168 of 1908.
Defendant answered admitting liability. under its policy of Fire Insurance, but contended that the amount claimed by the plaintiff is far in excess of the actual loss and damage caused to plaintiff's property by the fire.
The lower court rendered judgment in favor of plaintiff in the amount of $299.38, *Page 532 
which award represented $243.00 for repairs, $24.30 as a commission or handling charge for the contractor, $32.08 as a penalty, and in addition thereto $50.00 as attorney's fees. From this judgment defendant prosecutes this appeal.
The record reflects that on February 6, 1948, a fire occurred in the premises of #3245 Gentilly Avenue, the commercial portion of which is occupied as a drug store, and the residential portion thereof is occupied, by the owner, as a residence. The origin of the fire was in the vicinity of the hot water heater which served the residence of plaintiff. The cause of the said fire is not reflected by the record, but when it was discovered by the plaintiff, it appeared to him that some weatherboards were burning or smouldering. The vent pipe attached to the water heater passed through these weatherboards. Plaintiff called the fire department for assistance, which responded and used a garden hose to extinguish the smouldering weatherboards. The firemen admit having removed some weatherboards in and around the vent pipe to ascertain that the fire had been definitely extinguished within the wall. There is a dispute between plaintiff and defendant as to whether the firemen poured water through the vent pipe in an effort to extinguish the fire and thus damaged the overheated coils of the heater with cold water.
The firemen contend that water was directed around the vent pipe and not through it. On the other hand, plaintiff's plumber testified that the overheated coil was damaged by cold water and that the said heater suffered other damages, particularly to the main valve and to the gas valve by virtue of the fire. Be that as it may, plaintiff, on the same day, February 6, 1948, notified the defendant insurance company's agent, H. M. Pearce, who visited the scene of the fire, and later the same day admitted to plaintiff, defendant's liability under its policy for the fire damage, and requested plaintiff to have the damage repaired, stating that the defendant would pay for the damage to plaintiff's premises caused by the fire.
Defendant admits that no "proof of loss" forms were furnished at this, or any other time, to plaintiff. Subsequently, when the fire damages had been repaired, plaintiff sent to defendant, through its agent, Pearce, the following bill, and requested payment:
"Painting $135.00 For changing and reconditioning and installing water heater 83.00 Carpenter labor 13.00 Lumber, nails and paper 12.00 ------- $243.00 10% handling 24.30 -------- TOTAL $267.30"
Shortly after receipt of the above bill, Pearce called upon plaintiff to discuss what he termed the excessive charges for repairing the water heater. Plaintiff maintained that the cost of repairing this heater was just and reasonable. Defendant conversely maintained that the charge was unreasonable and thereafter refused to pay the amount of the loss as indicated by the bill or any part thereof. As a result of defendant's failure to pay the alleged fire loss, plaintiff instituted this suit.
Defendant has admitted its liability under the policy, therefore, the only question presented for our consideration is the amount that plaintiff is entitled to recover from the defendant.
Defendant maintains that (1) the claim for the contractor's commission of 10% or $24.30 should be disallowed because William C. Osborne performed no services as contractor; (2) the claim for repairing the hot water heater, in the amount of $83.00, should be disallowed because no fire or water damage was occasioned to the heater; (3) the charge for painting in the amount of $135.00 was excessive and should be reduced to $70.00; and (4) that the penalty of 12% ($32.08), as provided for in Act 168 of 1908, plus attorney's fees of $50.00 should be disallowed because, inasmuch as defendant admitted liability, there was no need to furnish plaintiff with the "proof of loss" forms, however, defendant admits that more than sixty days have elapsed since plaintiff made demand *Page 533 
upon defendant for payment of the alleged fire damage.
We are of the opinion that the claim for the contractor's commission of 10% or $24.30 for handling charges, should be disallowed because the contractor, Osborne, admitted that he did not engage any sub-contractor to do the painting or the plumbing work and that he, the contractor, only furnished the carpentry labor and materials, as will be observed from the following testimony:
"Q. You did not engage any sub-contractor to do the painting work, did you? A. No, sir.
"Q. You did not engage any plumber as sub-contractor, to do the plumbing work, did you? A. No, sir.
"Q. And you had no arrangement with Mr. Ware to pay you anything for your assistance? A. No, sir."
We are of the opinion that the claim for damages of $83.00 to the hot water heater were properly allowed. Defendant attempted to show that no damage occurred to the heater in question, by placing two firemen on the stand and eliciting from them that in directing water around the vent pipe, which was connected to the water heater, they were careful not to direct any water into the vent pipe or the heater. However, there was no testimony to the effect that either of these firemen examined the heater after their mission was accomplished to ascertain that no cold water had come in contact with the over-heated water heater, or that the heater was not damaged by the fire. On the other hand, we have the positive testimony of the plumber who testified that "the heater was flooded with water" caused by the firemen "they pumped it on". The plumber further testified that the "cold water" on the heater "loosens the lime in the coils and it jams up, clogs it up and the main valve and the gas valve were damaged". The plumber testified that the charge of $83.00 for repairing the "heater" also included the replacing of a new "vent pipe".
We are also of the opinion that the item of $135.00 for painting of the rear portion of this building was reasonable and is supported by the evidence and should be allowed. It is not disputed that weatherboards were removed from the rear portion of the building in order to ascertain that no fire existed within the walls. It is estimated that at least ten square feet of weatherboards were removed and one of the firemen testified that there was discoloration on the rear portion of the building due to smoke. Osborne, the contractor, testified that a painter, who was in the process of painting the whole building, had given him and the plaintiff the estimate of $135.00, and that in his (Osborne's) opinion, the charge was reasonable. In response to a question of "what do you base that on Mr. Osborne?" he stated, "Experience that I have had and work that I have done".
Relative to the penalty of 12% or $32.08, as provided for in the Act of 1908, plus $50.00 attorney's fees, we are of the opinion that the penalty and attorney's fees were properly awarded to plaintiff.
Section 3 of Act 168 of 1908 provides:
"Be it further enacted, etc., That whenever any loss or damage shall be suffered in this State from fire by any person, firm or corporation upon property insured under a policy of insurance of any fire insurance company doing business in this State, it shall be the duty of the fire insurance company that has issued the policy or policies upon receipt of proofs of loss from the assured, to pay the amount due under its policy or policies, within sixty days thereafter, or if the said proofs of loss are not satisfactory to the company, it shall be the duty of the company to proceed under the terms of the policy or policies to ascertain and adjust the amount of the loss and its liability under its policy or policies and to make payment of the amount due under the policy or policies to the insured within sixty days from the date upon which it received the proofs of loss offered by the assured, and should the company fail to pay, within said time the amount due the insured under the policy after demand made therefor, such company shall be liable to pay the holder or holders of such policy in addition to the amount of the loss, 12 per cent damages on the total amount of the loss as may be *Page 534 
determined by a court of competent jurisdiction together with all reasonable attorney's fees for the prosecution and collection of such loss; * * *".
In the case of Isaac Bell, Inc., v. Security Insurance Company, 175 La. 599, 143 So. 705, 707, the Supreme Court said:
"We think that section 3 of Act No. 168 of 1908 is mandatory and must be given effect in every case where the insurance company resists payment of the whole or any part of a loss covered by its policy, provided the insured judicially recovers more than the insurer admits to be due and timely tenders or pays to him."
See, also, Perot v. Carolina Insurance Company of Wilmington, N.C., La. App. 171 So. 458; Chambers v. North British 
Mercantile Insurance Co., La. App. 175 So. 95; Dutton v. Harmonia Insurance Company of Buffalo, N.Y., 191 La. 72,184 So. 546.
In this case the defendant insurance company resisted payment of the whole or any part of the plaintiff's loss.
For the reasons assigned the judgment appealed from is amended by reducing the amount awarded plaintiff from $299.38 to $275.06 and as thus amended, it is affirmed at the cost of defendant.
Amended and affirmed.