HAMITER, Justice.
 

 For a cause of action herein plaintiff, Clifton S. Stovall, alleged that his one-story building, known as the North Hangar and situated at the Stoval Airport near Shreveport, was insured by the defendant, Empire State Insurance Company, and two other insurance companies for the total amount of $5000, each of whom became liable for one-third thereof in case of loss or destruction by fire; that he erected it during the year 1943 at a total cost of $6000; that the building was completely destroyed by fire of unknown origin on March 4, 1946; and that defendant has refused to pay its proportionate part of the insurance notwithstanding proof of loss having been submitted and a period of more than 60-days thereafter having elapsed.
 

 Plaintiff prayed for judgment against this defendant in the sum of $1666.66, with legal interest thereon from judicial demand, plus a 12% penalty and attorney’s fees of $750.
 

 In its answer defendant admitted the issuance of the policy alleged on, it being for a term of one year from April 5, 1945. Then it pleaded affirmatively that (1) plaintiff was without an insurable interest in the property insured and (2) the “policy was null and void from its inception due to the designed and intentional withholding of facts material to the risk which Clifton S, Stovall, in honesty and good faith, ought to have communicated to your respondent and that had respondent known of said facts the said policy would not have been issued.”
 

 After trial there was judgment in favor of plaintiff for the sum demanded, together with legal interest thereon from -judicial demand, plus a- penalty of 12% and attorney’s fees of $300.
 

 Defendant obtained and perfected a sus-pensive appeal, and in this court plaintiff answered it praying that the award of attorney’s fees be increased.
 

 
 *103
 
 For a proper consideration of the several' defenses pleaded and urged herein it is necessary to have in mind certain circumstances relating to plaintiff’s claim to ownership of the North Hangar, insured under •defendant’s policy for one year from April 5, 1945, and which was destroyed by fire on March 4, 1946. As disclosed by the record, George W. McMurray and the Howell Land & Improvement Company, as owners, leased in writing unto one Kirby S. Shaw on November 4, 1941, the land on which the building was later constructed. The lease was for a term of five years, and the instrument evidencing it recited, among other things, that the property was to be ■used exclusively for the construction and operation of an airfield or aviation school. Subsequently, there was written on the back of the instrument, in long hand, the following notation:
 

 “The lease on this document is herewith transferred to Stovall Field, Inc., releasing assignor of all liability. Shreveport, La. Apr. 18, 1942.
 

 ■“Accepted: Stovall Field, Inc.
 

 “By Clifton S. Stovall, Pres.
 

 “Kirby S. Shaw.”
 

 On that same date (April 18, 1942), articles of incorporation for Stovall Field,' Inc., were signed, and two days later they-were , filed for record with the Clerk of Court of Caddo Parish. The incorporators, with the shares of stock subscribed by: each, were Clifton S. Stovall, 49 shares,' Norman K. Michel, 50 shares, and Mrs. Lillian Stovall, 1 share.
 

 During the latter part of 1942 and the early part of 1943 the North Hangar, insured under the policy in question, was erected.
 

 Ralph Brandon, in May, 1943, acquired by purchase the land affected by the lease and on which the North Hangar was built, and he still owned it at the time of the institution of the instant suit.
 

 On March 20, 1945, under an agreement in compromise of a claim against him, Clifton S. Stovall granted unto one M. C. Thompson a lease on the North Hangar, it to endure until November 4, 1946, the date stipulated for the expiration of the mentioned land lease.
 

 Under the plea that Stovall was without any insurable interest in the destroyed building, defendant first takes the position that Stovall Field, Inc. (not Stovall individually) owned the lease, together with all improvements on the leased land, and in support thereof it directs attention to the chartering-of that corporation- and to Shaw’s assignment of the lease.-to it.The record conclusively shows, .however, that Stovall Field, Inc., although duly, chartered, did not function at all, carried-on nó business whatsoever, and its shares'of stock were neyer issued to the subscribers.. Furthermore, it appears that Stovall personally built the hangar at a cost'to him in-excess of -$5000, .that -he -did not transfer it to the corporation, and-that, he at all ■-times--was
 
 *105
 
 treated as the owner of the lease by those who dealt with him, including Brandon (the landowner) and the agent who solicited the insurance and wrote it in Stovall’s individual name.
 

 Next, in further support of the plea of lack of insurable interest, defendant shows that on the occurrence of the fire Stovall was in arrears with his landlord respecting payment of rent and certain taxes, and it urges that by reason of the nonpayment of that indebtedness when dr; the building became the property of the lessor under the following provision of the lease:
 

 “It Is Understood that said property is to be used exclusively for the construction and operation of an airport or aviation school and it is contemplated that lessee will build on said premises such improvements and structures as may be deemed advisable for said purpose, and said buildings and improvements shall be and remain the property of lessee so long as there is no default hereunder * *
 

 We do not construe the provision relied on as effecting a transfer of ownership of the improvements immediately upon a failure to timely pay rent and .taxes. It does not specifically so declare, and when read with other provisions of the leasé clearly that effect was not so intended. 'Thus, the lease further recites; ’ '
 

 “ * * * a'nd lessee shall have the right upon termination of this lease, for a period of ninety (90) days, to go on said property and remove"' said improvements,
 

 provided all amounts due lessor hereunder have been fully paid, but if lessee fails or refuses to remove said improvements within said period, they shall become the property of lessor and lessee agrees upon removal of the improvements to level the property and place it in the same condition as when received.
 

 * * * * * *
 

 “That in case of default in any of the covenants herein, Lessor may enforce the performance of this lease in any modes provided by law, and this lease may be forfeited at Lessor’s discretion if such default continue for a period of ten days after Lessor notifies said Lessee of such default and his intention to declare the lease forfeited * *
 

 Under these provisions Stovall would continue to be the owner of the improvements for a period of at least 90 days after the lease’s termination, whether the termination result from the expiration of its term or from a forfeiture based on a default and declared only after the stipulated notice to the lessee had been given.
 

 In this connection it is appropriate to point out that on. March 6, 1946, or'fwb days after the fire, the lessor demanded in writing from Stovall payment of' rent and taxes, and further stated in the letter that unless the sum due “is paid within 'ten days from the date bn which jmr 'receive this letter, I"shall7declare the''aforesaid lease forfeited'^in'-'a'ccordarice’ with'’ the right so to do given the lessor’iff''the--said
 
 *107
 
 lease.” This, unquestionably, was a- recognition on the part of the lessor that the lease previously had not been terminated.
 

 The fact that one M. C. Thompson was using the North Hangar at the time of the fire in no manner affected the insurable interest of Stovall. The latter was still the recognized owner thereof, and the former, under a lease arrangement supported by a valid consideration, merely occupied the building as a tenant.
 

 The defense that Stovall intentionally and designedly withheld material facts from the agent who wrote the insurance, thereby rendering the policy null and void from its inception, is likewise without merit. Counsel for defendant, to quote from their brief, argue:
 

 “When all of the facts and circumstances are considered in connection with the risk at the time of the issuance of the policy and when it is considered that none of these facts were disclosed to the agent of the company, it is submitted that the insured in this case was guilty of fraud. He did not advise the agent that the building was on leased property; he did not reveal to the agent that he had granted the free use of the building to Thompson in settlement of a law suit; he did not reveal to the agent that the rent had not been paid and that he was having trouble with his landlord. All of these facts were material to the risk and were very important. No disclosure whatever was made to the agent in this case,”
 

 Perhaps the agent did not have some of these facts when the policy was written, but it does not appear that Stovall fraudulently withheld or prevented his obtaining them. The agent, according to his own testimony, solicited the insurance from Stovall, knowing at the time that Brandon owned the land. With this knowledge he-could have acquired the mentioned information very easily if it were material. Besides, the agent, so he testified, learned of the dispute over rental payments between Brandon and Stovall in October, 1945, long prior to the occurrence of the ■ fire, at which time the insurance might have been cancelled if defendant had desired.
 

 Also urged here, but not pleaded in the answer, is the alternative defense that the destroyed building was worth much less than the amount for which it was insured. This defense is not supported by the record. As we appreciate the evidence the North Hangar, as it stood immediately before its destruction, had a value of at least $5000, the amount of the total insurance. It is argued by defense counsel,however, that since Stovall, under his: agreement with the lessor, would have to-remove the structure at the termination-of the lease and this by means of dismantling because of the type of its construction, the building must be valued as if in a demolished condition. We seriously-doubt that such a test is appropriate in determining the value; it is grounded on conjecture. There is no conclusive show
 
 *109
 
 ing that some satisfactory disposition of the standing building could not and would not have been made by Stovall at the lease’s termination had there been no fire.
 

 This leaves for consideration only the question of attorney’s fees, appellee having requested in his answer to the appeal that the award of $300 be increased. We shall not disturb the award. In view of the amount of plaintiff’s claim herein and the fact that the judgment also imposes a statutory penalty on defendant, it seems adequate.
 

 For the reasons assigned the judgment is affirmed.
 

 O’NIELL, C. J., takes no part.