**RELIANCE INSURANCE COMPANY,**
Plaintiff,

v.

**ORLEANS PARISH SCHOOL BOARD,**
Defendant.

**ORLEANS PARISH SCHOOL BOARD,**
Plaintiff,

v.

**NIAGARA FIRE INSURANCE COMPANY et al., Defendants.**

Civ. A. Nos. 8742, 10339.

United States District Court
E. D. Louisiana,
New Orleans Division.

April 3, 1961.

Deutsch, Kerrigan & Stiles, Rene H. Himel, Jr., Frank J. Peragine, New Orleans, La., for Reliance Ins. Co.

Polack & Rosenberg, Samuel I. Rosenberg, New Orleans, La., for Orleans Parish School Board.

WRIGHT, District Judge.

These consolidated actions concern the interpretation of a contract of insurance entered into between the Reliance Insurance Company and the Orleans Parish School Board. The primary question presented is whether the policy in suit offers blanket fire coverage on all property owned by the School Board, each piece to the full amount of the policy, or whether the policy is a scheduled one with coverage limited to the stated value of each piece. In short, is this a blanket policy or a scheduled policy?

■■ The parties are in agreement as to the difference between blanket and scheduled policies. Without conflict, the evidence shows that a blanket policy covers multiple pieces of property at an average rate, each piece being insured up to the total amount of insurance on all the property.[1] A scheduled policy, on the other hand, relates to specifically described individual pieces of property, insuring each in an amount specifically designated at a rate justified by the risk on that property.[2]

■ A blanket policy is usually issued on the basis of a statement of values listing property included in the coverage. This statement of values does not become a part of the policy, and may not be used as a coverage limitation in adjusting losses. Since each piece of property is insured to the full extent of the total coverage, the actual value of the piece at the time of the loss is the only limitation. In a scheduled policy, each specific piece of property in the amount covered is listed in the policy itself, which listing not only is referred to in making adjustments for losses, but provides the limit of recovery under the policy.

The School Board, in its invitation to bid for the insurance, provided a statement of values of its property, together with its "blanket form," which blanket form was required to and did become part of the policy when issued. This blanket form specifically provides coverage "On all property [of the Board] of every kind and description, both movable and immovable," without in any way listing such property. The policy itself, in the place provided for the schedule or listing of the property covered, merely gives the dollar amount of the total coverage at an average rate, and, for the description of the property covered, merely refers to the attached form, the School Board blanket form.

At the time of the loss in suit, the policy had been endorsed many times. These endorsements were issued whenever property was to be deleted from the coverage, as when the property no longer belonged to the School Board, or when property was to be added to the coverage, as when such property was acquired by the Board. These endorsements not only specified the value of the property added or deleted, but also changed the total amount of the coverage of the policy by reason of such addition or deletion.[3] No change, however, was made in the average premium rate, irrespective of the type of property added or deleted.

On March 27, 1958, the St. Landry School, owned by the Orleans Parish School Board, suffered a fire which resulted in almost total destruction of the school and its contents. The precise

1. See National Bank of Burlington v. Fidelity & Casualty Co. of N. Y., 4 Cir., 125 F.2d 920, 924, 140 A.L.R. 694, and cases there cited. See also, 6 Appleman, Insurance Law and Practice, § 3912, p. 297.

2. See Note 1 and Vance on Insurance (1951), p. 63.

3. A typical endorsement reads as follows: "In consideration of an additional premium of $3.79, the following locations and amounts totaling $9,500.00 are added to the schedule effective June 3, 1954, and the total insurance is increased in the amount of $8,550.00. This policy being for 30% of the total contributing insurance is increased in the amount of $2,565.00 and the policy now covers in total amount of $15,016,933.97.
"830 North Tonti Street $5,000.00
"822–24 North Tonti Street 4,500.00"

question presented by this litigation is the amount to which the School Board is entitled by reason of this loss. The School Board's position is that it is entitled to the amount which will restore the damaged immovable property to its original condition, plus the actual cash value of the movable property at the time of the loss. The insurer contends that its liability for the loss is limited to the value of the St. Landry School and its contents as shown in the statement of values which accompanied the invitation to bid. Both parties rely on the Valued Policy Law [4] of Louisiana, which limits the insurer's liability to the total amount for which the property is insured, the School Board maintaining that the total amount for which the property is insured is the total amount of insurance on all of its property, whereas the insurer maintains that the total amount of insurance refers to the value of the specific property involved in the loss as shown in the statement of values.

 Both parties agree, or at least their witnesses agree, that the policy in suit, considered without its endorsements, is a blanket policy. This is so because it was issued on a blanket form, at an average rate, in a total amount, on all of the property of the Orleans Parish School Board. The statement of values which accompanied the invitation to bid was not attached to or made part of the policy. The only property description in the schedule [5] of the policy was a reference to the blanket form covering all School Board property. Under such a policy, the amount of coverage as to each

piece of property was the total coverage of all of the property. The total coverage floated over all of the property, fully covering the fluctuating value of each piece.[6]

But the insurer argues that, because the endorsements specified the individual pieces of property and their values to be deleted from or added to the coverage, the policy was somehow converted into a scheduled policy. In other words, these endorsements, according to the insurer, in some way had the retroactive effect of reading into the policy all of the individual pieces of property of the School Board, at their stated values, which were neither listed therein nor made a part thereof.

These endorsements are at best equivocal. It is true they specify the property to be added or deleted and its value. But it is also true that these same endorsements show the effect on the total coverage of the additions or deletions, indicating, of course, that each piece of property owned by the Board continued to be covered up to the total amount of the coverage. Moreover, the endorsements were all issued at the same average rate as the policy. The agent of the insurer, who executed the policy in its behalf and who prepared the endorsements thereto, testified that he had issued a blanket policy, that he had no intention of converting it into a scheduled policy by endorsement, and that his only purpose in showing in the endorsements the specific property being added to or deleted from the coverage was to supple-

---

4. LSA–R.S. 22:695. This statute provides in pertinent part as follows:

"Under any fire insurance policy * * on * * * inanimate property, immovable by nature or destination, situated within the state of Louisiana, the insurer shall pay to the insured, in case of total destruction * * * the total amount for which the property is insured, at the time of such total destruction, in the policy of such insurer.

" * * * the insurer shall pay to the insured, in case of partial damage * * * such amount, not exceeding the amount for which the property is insured, at the time of such partial damage, in the policy of such insurer, as will permit the insured to restore the damaged property to its original condition."

5. The schedule of the policy is that part which itemizes the property covered and shows the amount of coverage as to each item. Here there was only one item: " * * * all property [of the Board] of every kind and description, both movable and immovable." The total amount of coverage is shown alongside that item.

6. See Notes 1 and 2.

ment the original statement of values which accompanied the invitation to bid.

■ Unquestionably, these endorsements are inartistically drawn. But, admittedly, they were drawn by the agent of the insurer as amendments to the insurer's policy. And it is hornbook law that ambiguities in the policy or its endorsements are to be construed most favorably to the insured. This is particularly so where the policy itself is free from ambiguity and ambiguous language in the endorsement is sought by the insurer to change the clear language of the policy.

The position of the insurer in this case is most difficult to understand. It objects to the admission of parol evidence to vary the terms of the policy, asserting that the language of the policy, including the amendments, is clear and unambiguous. Yet it would have this court refer to the statement of values which accompanied the invitation to bid, but which was not made part of the policy, to determine the extent of its coverage of the loss in suit.[7] The simple fact is that this policy of insurance, unlike most policies, and unfortunately for the insurer, is crystal clear. It provides coverage in the total amount of the policy on each piece of property owned by the Orleans Parish School Board.

■ The banket form attached to and made part of the policy has a co-insurance provision which requires the assured to maintain insurance "on each item of property insured in this policy of not less than ninety (90%) per cent of the actual cash value thereof" at the risk of becoming an insurer to the extent of the deficit. The insurer makes much of this language, arguing that "each item of property" clearly indicates that the parties intended a scheduled, rather than a banket, policy. However, reference to the part of the policy where the property insured is itemized shows only one item simply described: "As per form attached." And the form attached, of course, provides for coverage on all property owned by the Board without delineation. Actually, it is this 90 per cent co-insurance clause which required the insurer to be advised of changes in the School Board property covered so that the insurer would be in a position to determine whether or not the clause was being complied with. Under this blanket policy the clause would be satisfied as long as the total amount of coverage was 90 per cent of the total value of all the property. In order to make this determination, it would be necessary for the insurer to have this information.

■ Consequently, unless the insurer here can prove that the total amount of coverage as shown on the policy is less than 90 per cent of the total value of all of the property of the Orleans Parish School Board, it will be required to pay the Board such amount as will permit the insured "to restore the damaged [immovable] property[8] to its original condition," including architect's fees, in addition to an amount equal to the actual cash value[9] of the movable property lost in the fire.

7. Under Louisiana law it is doubtful that this statement of values is even admissible in evidence. See LSA–R.S. 22:618.

8. LSA–R.S. 22:695; Tilley v. Camden Fire Ins. Ass'n, 139 La. 985, 72 So. 709; Garnier v. Aetna Ins. Co. of Hartford, Conn., 181 La. 426, 159 So. 705. See also, Vance on Insurance, p. 769.

9. The Valued Policy Law of Louisiana does not apply to movables. Tedesco v. Columbia Ins. Co., 177 La. 142, 148 So. 8. Fire loss on movables is governed by statute. LSA–R.S. 22:691; Lake Arthur Dredging Co. v. Mechanics' Ins. Co., 162 La. 1090, 111 So. 466, 469.