**RELIANCE INSURANCE COMPANY,**
**Plaintiff,**

v.

**ORLEANS PARISH SCHOOL BOARD,**
**Defendant.**

Civ. A. No. 8742–B.

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 5, 1962.

Deutsch, Kerrigan & Stiles, Rene H. Himel, Jr., Frank J. Peragine, New Orleans, La., for plaintiff.

Samuel I. Rosenberg, New Orleans, La., for defendant.

J. SKELLY WRIGHT, District Judge.

In a prior opinion in these proceedings,[1] this court held that the policy in suit provided blanket coverage and that each individual parcel of property owned by the Board is covered up to the total value of all the property. Consequently, any loss under the policy, short of total destruction of all the schools covered, would be a partial loss, irrespective of the fact that the particular school building subjected to the fire may be totally destroyed. This court further held that "unless the insurer here can prove that the total amount of coverage as shown on the policy is less than 90 per cent of the total value of all of the property of the Orleans Parish School Board, it will be required to pay the Board such amount as will permit the insured 'to restore the damaged [immovable] property to its original condition,'[2] including architect's fees, in addition to an amount equal to the actual cash value of the movable property lost in the fire."[3] Since the insurer has stipulated that the face amount of the policy was 90 per cent of the aggregate value of the property insured at the time of the fire, and since the parties have agreed as to the actual cash value of the movable property lost in the fire,[4] there remains for determination only the cost of re-

---

1. Reliance Insurance Co. v. Orleans Parish School Board, E.D.La., 192 F.Supp. 524.

2. LSA–R.S. 22:695, subd. B.

3. Reliance Insurance Co. v. Orleans Parish School Board, supra, 192 F.Supp. 527.

4. The value is stipulated to be $83,667.00.

storing the St. Landry School to its original condition at the time of the fire.

The parties have stipulated that the replacement cost of the entire building would have been $408,000, $385,000 construction costs plus $23,100 architect's fees at 6 per cent. This figure, plus $8,724 for demolishing the portion of the building left standing and removing the debris left by the fire, is the amount the Board claims as restoration costs. The parties have further stipulated that $336,600, $306,000 construction costs plus $30,600 architect's fees at 10 per cent, is the cost of replacing that portion of the building which was totally destroyed by fire and of repairing that portion of the building which was not destroyed by fire. This figure, less depreciation and obsolescence stipulated to be 21 per cent of the replacement cost, is the amount suggested by the insurer.

 The test in determining restoration costs, insofar as they relate to the use or non-use of part of a building left standing after a fire, is what a reasonably prudent uninsured owner would do under the circumstances.[5] While the Louisiana cases do not in terms use this language in making this determination, an analysis of these cases shows that this is, in effect, the test which the Louisiana courts apply.[6] Applying this test here, this court finds that the part of the St. Landry School remaining standing after the fire was not usable in effecting its restoration.

 The evidence shows that of the 25 per cent of the building left standing, only the studs and frames were usable in restoration. And in using these standing parts, there would be no guarantee of the structural integrity of the restored building. The assured is not required to assume this risk.[7] Moreover, the evidence is uncontroverted that the building, in any event, could not be restored to its condition before the fire because of current municipal building code requirements. As an existing building before the fire, it complied. Since its damage from the fire amounts to 75 per cent of the entire structure, restoration must conform to the current code requirements.[8] These requirements make the remaining 25 per cent unusable. The assured should not be penalized by the change in code requirements. The Board kept its insurance current. No reason appears why that current insurance did not protect against code changes.[9]

 With reference to depreciation, again the position of the insurer is without merit. The insurer insists on referring to the provisions of the Standard Fire Policy Act[10] in support of its contentions. As to depreciation, it particularly points to the language of that Act, which language is repeated in the policy here in suit, which limits recovery to "actual cash value" of the property lost in the fire. Then the insurer cites the long line of cases which interprets "actual cash value" as replacement cost less depreciation.

What the insurer ignores in making this argument is the settled jurisprudence of this state to the effect that the Valued Policy Law,[11] not the Standard

5. See Vance, Handbook of the Law of Insurance, at page 771.

6. See Hart v. North British & Mercantile Ins. Co., 182 La. 551, 162 So. 177; Occhipinti v. Boston Ins. Co., La.App., 72 So.2d 326; Mix v. Royal Exchange Assur. Co., La.App., 54 So.2d 355; Briede v. Commercial Union Assurance Co., 14 Orleans App. 120. Compare Lake Arthur Dredging Co. v. Mechanics' Ins. Co., 162 La. 1090, 111 So. 466; Monteleone v. Royal Ins. Co., 47 La.Ann. 1563, 18 So. 472, 56 L.R.A. 784.

7. See Occhipinti v. Boston Ins. Co., supra, 72 So.2d 332.

8. Orleans Building Code, Art. 1607.

9. See Hart v. North British & Mercantile Ins. Co., supra; New Orleans Real Estate M. & S. Co. v. Teutonia Ins. Co., 128 La. 45, 54 So. 466; Briede v. Commercial Union Assurance Co., supra, 14 Orleans App. 123.

10. LSA–R.S. 22:691.

11. LSA–R.S. 22:695.

Fire Policy, governs fire loss on immovables.[12] And this is so even though, as required, the policy here faithfully tracks the Standard Fire Policy form. There is no reason for this court, if it could, to explain the obvious anomaly. This is for the Louisiana courts. All this court must do is read the Louisiana jurisprudence as it finds it, irrespective of its confused state.

So doing, no Louisiana case is found which allows depreciation on replacement cost of an immovable fire loss.[13] The one case [14] cited by the insurer which seems to so hold was apparently based on a loss occurring before the Valued Policy Law became effective. The other cases cited by the insurer are either from other jurisdictions or relate to fire loss on movable property. The conclusion must be that restoration cost, without depreciation, is the measure of recovery for fire loss on an immovable in Louisiana.

■ The Board, alleging the insurer's failure to pay the loss on the policy, also makes a claim for attorney's fees and statutory penalty under LSA–R.S. 22:658. The statute provides for attorney's fees and penalty where the insurer's failure to pay is "arbitrary, capricious, or without probable cause." It is true that the Louisiana courts have, at times, interpreted this language loosely.[15] But not loosely enough to lasso the insurer here. The insurer deposited in the registry of the court a substantial sum covering what it concedes to be its indebtedness under the policy. While this alone may not prove good faith, it is a step in the right direction. Moreover, while many of the insurer's arguments appear improvised, indicating a reluctance to pay fully what is owed under the policy, this court cannot with assurance say that the insurer's conduct is "arbitrary, capricious, or without probable cause" within the intendment of this penal statute.[16]

Judgment should be entered in favor of defendant for $115,002.50,[17] with interest from the date of judicial demand,[18] plus costs.

12. On two different occasions the Louisiana Supreme Court has held that the Standard Fire Policy applies solely to movables and the Valued Policy Law applies to immovables. Hart v. North British & Mercantile Co., supra; Lake Arthur Dredging Co. v. Mechanics' Ins. Co., supra. Since those decisions the Louisiana legislature has re-enacted or amended the Standard Fire Policy Act and the Valued Policy Law no less than four times without reference to, and without changing, the judicial interpretation placed on these statutes. Act 251 of 1944; Act 540 of 1950; Act 295 of 1952; Act 125 of 1958. The Louisiana courts have apparently read these statutes correctly. See Hart v. North British & Mercantile Ins. Co., supra, 162 So. 181.

13. There are many which apparently deny depreciation. Aycock v. Republic Insurance Company, La.App., 116 So.2d 317, 74 A.L.R.2d 1267; Ware v. American Druggists' Fire Ins. Co., La.App., 38 So.2d 531. See also Tilley v. Camden Fire Ins. Ass'n, 139 La. 985, 72 So. 709, 711. Compare Brocato v. Sun Underwriters Ins. Co. of New York, 219 La. 495, 53 So.2d 246, 29 A.L.R.2d 629.

14. Stenzel v. Pennsylvania Fire Ins. Co., 110 La. 1019, 35 So. 271. This case was decided in 1903. The Valued Policy Law first became effective in 1900 via Act 135 of that year. Incidentally, despite the suggestion in the court's syllabus of this case that depreciation was a consideration in determining the amount payable under the policy, the court granted judgment in the full amount thereof. Moreover, the court's authority for its ruling, quoted in 35 So. at p. 273, begins "Except as otherwise provided by valued policy laws, * * *."

15. See, e. g., Thomas W. Hooley & Sons v. Zurich Gen. Acc. & L. Ins. Co., 235 La. 289, 103 So.2d 449, 67 A.L.R.2d 1078.

16. See Finley v. Hardware Mutual Insurance Company, 237 La. 214, 110 So.2d 583, 587.

17. Plaintiff was the 50 per cent insurer of the Board's property. Thus the board is entitled to one-half of replacement cost plus cost of debris removal plus movables loss, less the amount already paid.

18. Gettwerth v. Teutonia Ins. Co., 29 La. Ann. 30. See also Stovall v. Empire State Ins. Co., 215 La. 100, 39 So.2d 837.