311 So.2d 534 (1975)
Richard D. HUMPHRIES, Plaintiff-Appellee,
v.
PURITAN LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 4951.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1975.
*536 Bolen & Halcomb by Roy S. Halcomb, Jr., Alexandria, for defendant-appellant.
Ralph W. Kennedy, Alexandria, for plaintiff-appellee.
Before HOOD, MILLER and WATSON, JJ.
MILLER, Judge.
Defendant Puritan Life Insurance Company appeals the judgment awarding plaintiff Richard D. Humphries $550 together with penalties and attorney's fee, under Puritan's Student Accident Insurance Policy. Plaintiff answered the appeal seeking an increase in the attorney's fee award. We affirm.
Puritan's policy was offered to students for the 1972-73 school term. Students were given a brochure, with application attached, summarizing the available benefits. The "master policy" was kept on file at each school. The master policy provided for coverage "up to $10,000" for Medical and Dental Expense: "If by reason of Injury the Insured shall incur any one or more of the following Covered Charges, Puritan Life will pay the necessary expense incurred for such treatment, care, and services within fifty-two (52) weeks after the date of accident, not to exceed the amounts specified hereunder nor to exceed the Maximum Medical Expense Benefit specified in the Schedule as the result of any one accident; provided, however, that the first such expense as to each Covered Charge must be incurred within ninety (90) days after the date of accident." Among the nine listed "Covered Charges" were "SURGERY, the usual and customary charges in the area, not to exceed allowances under the current State Medical Society relative value scale, using a $5.00 unit value. Payment for anesthetists shall not exceed fifteen percent (15%) of the allowance for surgery;" and "HOSPITAL CARE AND SERVICE, when the Insured is confined as a resident patient for a least twenty-four (24) hours, not to exceed $100.00 for the first day and $50.00 for each subsequent day of such confinement".
The brochure which Richard brought to his parents described benefits "Up to $10,000 for the following treatment, care, and services within fifty-two weeks after the accident, . . . provided that the first expense as to each Covered Charge must be incurred within ninety days after the accident." In the section "How to file a claim," the brochure provides: "Accidents must be reported and bills submitted within 90 days." Additionally the brochure contained a prominent notice that the brochure should be kept "AS A SUMMARY OF BENEFITS UNDER YOUR STUDENT ACCIDENT INSURANCE. COMPLETE PROVISIONS PERTAINING TO THIS PLAN ARE CONTAINED IN MASTER POLICY ON FILE AT SCHOOL."
Plaintiff's father purchased the insurance to cover Richard during his senior year at Alexandria Senior High School. On October 19, 1972, Richard suffered a perforation of the eardrum of his right ear resulting from an accident on the school grounds.
When his ear continued to bother him for the week following the accident, Richard was seen by an ear, nose, and throat *537 specialist, Dr. Villard. He diagnosed a perforation of Richard's eardrum and prescribed conservative treatment in an attempt to avoid surgery. On each of six visits Dr. Villard cleaned Richard's ear using a suction and aspiration procedure and checked for infection. After the December 19, 1972 examination, Dr. Villard recommended surgery.
Richard had reported the accident to the school and was given a "Notification of Student Accident" form to be completed by his parents. The following statement appears at the top of the form: "This form must be completed and submitted to address shown above within 90 days from date of accident. Related bills may be forwarded later, after final treatment has been rendered." Plaintiff's father completed his portion of the form on November 2, 1972.
Part of the form was to be completed by Richard's attending physician. That portion was completed by Dr. Villard following Richard's sixth visit. To the question "What operation or operative procedure was performed?", Dr. Villard answered: "None yet, but anticipate surgery in the immediate future." Puritan received this form on January 5, 1973, and promptly paid Dr. Villard's $36.00 bill.
To get a second opinion as to whether surgery was necessary, Richard was seen by another ear specialist, Dr. Pate. Surgery was again recommended and on March 7, 1973, Dr. Pate performed a myringoplasty consisting of a vein graft from Richard's right arm which was used to make a new eardrum. The operation was a success.
Plaintiff's parents presented Puritan with a claim for three days hospitalization together with Dr. Pate's bill for services related to the March 7 surgery. Puritan denied these claims on the basis that those "expenses" were "incurred" more than 90 days following the accident.
Coverage
The major issue concerns the interpretation of the words "expense incurred" in the policy provision which limits the 52 weeks period of coverage. Puritan contends that although an expense (Dr. Villard's $36.00 bill) was incurred for "Medical Treatment" within 90 days after the accident, no expense was incurred within the 90 days period for the Covered Charges of "Surgery" or "Hospital Care and Service."
The trial court found coverage under the policy by applying the reasoning used in Valladares v. Monarch Insurance Company, 282 So.2d 569 (La.App. 4 Cir. 1973), writs refused 284 So.2d 603 (La.1973). We agree.
In Valladares, the issue was whether the cost of plastic surgery necessitated by an accident but performed more than one year after the accident, constituted an "expenses incurred within one year from the date of accident." The court held that where "the injury manifests itself within one year of the accident, the insurer is aware of the nature of the injury, the insured approaches a physician and obtains a diagnosis and recommended course of treatment prior to the expiration of one year from the date of the accident, and the treatment cannot successfully be completed within the one year period that the insured has nevertheless `incurred' an expense within the terms of the policy." 282 So.2d at 572.
In this case Dr. Villard recommended surgery and Puritan was notified of his recommendation within 90 days following the accident. The surgery was a direct result of the accident. Both Dr. Villard and Dr. Pate confirmed that conservative treatment for four to six weeks (to allow time for the perforation to heal itself) is the preferred treatment for a perforated eardrum. Surgery follows only when conservative treatment fails. Both doctors testified that patients frequently seek a second opinion when surgery is recommended.
*538 Applying the reasoning used in Valladares, we hold the first expense for "SURGERY" and "HOSPITAL CARE AND SERVICE" was "incurred within ninety (90) days from the date of the accident." Puritan's policy affords coverage for the full amount of Richard's claim.
To hold otherwise would cause surgery to be undertaken in some cases before it can be determined that it is necessary. Policies should not be construed to force patients to undergo surgery that might not be necessary on pain of forfeiting coverage. Dr. Villard's course of action was entirely proper and if successful, would have resulted in a saving for Puritan. This factor was discussed in the dissent in Cormack v. Prudential Insurance Company of America, 259 So.2d 340, 344 (La.App. 4 Cir. 1972).
The trial court did not give a strained interpretation to the words "expense incurred." Nor do we believe his holding violates the rule that "courts are not allowed to gerrymander provisions that are clear upon their face which would alter terms or change their import." Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72 (1939). Authorities are split among other states concerning the interpretation to be given the words "expense incurred." 10 A.L.R.3rd 468.
The case of Cormack v. Prudential Insurance Company of America, 259 So.2d 340 (La.App. 4 Cir. 1972) is distinguished. Cormack interpreted the term "rendered" rather than "expense incurred." Additionally, both Cormack and Valladares were decided by the Court of Appeal, Fourth Circuit, with Valladares being the latest expression and therefore controlling.
Furthermore, under the theory of "equitable estoppel," Puritan is estopped from denying coverage. Puritan misled plaintiff by furnishing him with the "Notification of Student Accident" form which stated that if the accident was reported within 90 days, bills may be forwarded later, after final treatment has been rendered. Plaintiff was led to believe that as long as he submitted the Notification of Accident form within 90 days of the accident, final treatment could be rendered within the 52 week period of coverage.
Puritan argues plaintiff did not specifically plead "estoppel." Since Puritan made timely objection to the enlargement of pleadings, it contends that equitable estoppel cannot be considered. We do not agree.
Puritan's answer denied coverage. Plaintiff's claim of equitable estoppel is a legal issue related to Puritan's denial of coverage. All allegations in the answer are open to every objection of law and fact (including estoppel) as if specifically pleaded. LSA-C.C.P. art. 852; See also, Deville Lumber Company, Inc. v. Chatelain, 308 So.2d 428 (La.App. 3 Cir. 1975), and Verret v. Norwood, 311 So.2d 86 (La.App. 3 Cir. 1975). The issue of equitable estoppel was properly before the court.
Penalties and Attorney's Fee
Puritan seeks to set aside the award of statutory penalties and attorney's fee granted pursuant to LSA-R.S. 22:657, and alternatively a reduction.
The failure of an insurer to pay a claim due to an erroneous interpretation of a policy provision in light of previous judicial determination, is arbitrary and capricious. Landry v. State Farm Mutual Automobile Insurance Company, 298 So.2d 291 (La.App. 1 Cir. 1974); Vallot v. All American Assurance Company, 302 So.2d 625 (La.App. 3 Cir. 1974); Broussard v. National American Life Insurance Company, 302 So.2d 627 (La.App. 3 Cir. 1974).
*539 Puritan contends that penalties and the attorney's fee should not be awarded because plaintiff did not give written notice and proof of loss "in the form required by the terms of the policy" (LSA-R.S. 22:657) until after suit was filed.
Where the insurer receives actual notice of a claim and refuses to pay, the company cannot escape liability on the ground that proof of loss forms were not received. Bamburg v. American Security Life Insurance Company, 241 So.2d 606 (La.App. 2 Cir. 1970). Puritan received the hospital bill on April 19, 1973, and denied coverage in a letter dated April 27, 1973. In a letter dated June 6, 1973, Puritan also denied coverage for the surgery. Suit was filed more than 30 days later. On finding $550 due plaintiff under the policy, the court properly awarded $550 in penalties. LSA-R.S. 22:657.
Puritan seeks a decrease, and plaintiff an increase, in the $1,500 awarded as plaintiff's attorney's fee. The amount awarded rests largely within the discretion of the trial judge. Niles v. American Bankers Insurance Company, 229 So.2d 435 (La.App. 3 Cir. 1970). Although the attorney's fee awarded exceeds the actual award plus penalties, we find no abuse of discretion. The award is sufficient to recompense plaintiff's attorney for services related to this appeal.
The final issue concerns the trial court's refusal to allow legal interest on the penalties and attorney's fee portion of the judgment. Plaintiff did not specifically pray for interest on these items, and the trial court properly rejected that claim. LSA-C.C.P. art. 1921; Bain v. Life & Casualty Ins. Co. of Tennessee, 188 La. 290, 176 So. 129 (1937); Sandifer v. Stephens, 8 La.App. 546 (2 Cir. 1928).
The trial court judgment is affirmed at appellant's costs.
Affirmed.