569 So.2d 1120 (1990)
William MORLTE, Plaintiff-Appellee,
v.
CERTIFIED LLOYDS, et al., Defendant-Appellants.
No. 89-476.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1990.
*1121 Downs & Downs, James C. Downs, Alexandria, plaintiff-appellee.
David E. Marquette, Baton Rouge, James N. Lee, Bunkie, for defendants-appellants.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
STOKER, Judge.
Plaintiff, William Morlte, brought suit to recover for damages to his automobile under his Certified Lloyds automobile insurance policy. The damages were sustained on June 6, 1988. The issue in this case is whether plaintiff's financed automobile insurance policy was in effect on that date. The insurer relies on a cancellation notice issued on January 21, 1988 by the premium financing agency relative to an earlier issued insurance binder. The defendants in this suit are I & F Insurance Agency, Certified Lloyds, Live Oak Underwriters (Certified Lloyds' insurance underwriter) and Premium Finance Company, Inc. The trial court held in favor of Morlte, finding that Certified Lloyds was estopped from denying liability to plaintiff. The trial court held Premium Finance not liable under the facts of the case.
Certified Lloyds appeals this judgment contending it is not liable because the policy was effectively canceled at the time of the accident and, in the alternative, that Premium Finance is liable to Morlte for misleading Morlte as to the existence of insurance coverage on his automobile. Morlte answered the appeal, asking that Premium Finance be held liable for damages in the event we find Certified Lloyds *1122 not liable. We affirm and amend to grant additional attorney fees.

FACTS
The trial court ably set forth the facts established at trial in its reasons for judgment which we adopt as our own as follows:
"Plaintiff went to I & F Insurance Agency in Alexandria to purchase insurance on a 1983 Ford LTD automobile which he had recently bought. I & F gave to plaintiff an `insurance binder' showing coverage effective at 3:45 P.M. on November 30, 1987, through January 30, 1988. The binder was signed by Mr. Errol Janet, as authorized representative, on November 30, 1987, and listed the insurance company as `Live Oak/Certified Lloyds.' The binder was unnumbered. (See P-1.) At this same time plaintiff signed a premium financing agreementtruth-in-lending disclosure on a form provided by Premium Finance Company, Inc. to I & F. The agreement stated that the policy was to be issued by Live Oak as the general agent and was to be issued by Certified Lloyds as the insurance company with an effective date of November 30, 1987 for a policy term of twelve months. The premium finance agreement provided that Premium Finance Company, Inc. (hereinafter Premium) was granted a power of attorney to cancel the policy for non-payment of premium and to collect all return premiums on the policy and to execute all necessary written instruments, lost policy releases and notices in connection therewith and `to do whatever is necessary in the cancellation of such policies.' Plaintiff paid, not the down payment of $338.00 listed on the premium finance agreement, but $30.00 to I & F. The payment in the amount of $107.90 was due Christmas Day of 1987. Errol Janet signed the agreement as agent. Plaintiff thought, contrary to the written document which he had signed, that his first payment would be due January 25th. Accordingly, he failed to pay the December installment and, in accordance with its power of attorney, Premium issued to Certified Lloyds through its general agent, Live Oak, a request for cancellation after sending the appropriate notice to plaintiff. Upon receiving the notice of cancellation, plaintiff went to I & F and inquired about the matter. He paid the policy premium [for December and January] of $221.19 plus a late charge of $5.39 which was received by Premium on February 4, 1988. Thereafter, he made payments which were received by Premium as follows:

2/23/88 $107.90
3/22/88 $107.90
4/25/88 $107.90
5/24/88 $107.90
6/27/88 $107.90

(See P-7, P-8)
"When Premium received the December and January payments in the total amount of $226.58, it wrote plaintiff on February 4, 1988, advising that binder # 1130723B with Certified Lloyds had been cancelled for non-payment. The letter provided that `we are accepting this payment on the basis that your insurance is cancelled at this time; but we will write to the insurance company requesting reinstatement as your note is no longer in default.' The letter further provided in a post script. `By copy of this letter to the company we are requesting they reinstate the above mentioned policy.'
"Ostensibly, in reply to Premium's request to reinstate the policy, Certified sent I & F Agency a memo requesting a statement of No Loss signed by William Morlte, said memo being dated February 22, 1988.
"Thereafter, plaintiff received correspondence from I & F Insurance Agency dated March 17, 1988, informing him that `please find enclosed your automobile policy effective November 30, 1987 through November 30, 1988 along with your Louisiana identification cards.' Enclosed in the I & F letter was a Certified Lloyds policy insuring plaintiff's automobile for liability, property damage, comprehensive and collision losses. The policy (see P-11) had effective dates of November *1123 30, 1987, through November 30, 1988. It was countersigned as being issued on February 10, 1988, some six days after the Premium letter of February 4, 1988, advising plaintiff that reinstatement of his insurance had been requested of Certified Lloyds. As noted above, plaintiff continued to pay with utmost faithfulness the monthly installments through June 27, 1988. On June 6, 1988, plaintiff loaned his automobile to Melvin Jenkins who struck a parked car while operating it. The uncontradicted evidence shows that the cost to repair plaintiff's vehicle is $2,309.85. On June 13, 1988 plaintiff submitted a proof of loss on a form completed by Mr. David Bates of David Bates Insurance Agency and within two weeks [July 6, 1988] Certified Lloyds issued a premium refund to Premium Finance Co., Inc. who in turn refunded the excess to plaintiff [August 12, 1988], both refunds being premises [sic] on the contention that the Certified Lloyds was `cancelled.' Plaintiff, through undersigned counsel, on July 26, 1988, made demand on Certified Lloyds and Premium for adjustment of the loss. All defendants have denied liability."

OPINION

CERTIFIED LLOYDS' LIABILITY
Certified Lloyds contends on appeal that Morlte's automobile insurance policy was effectively canceled as of January 21, 1988, due to Morlte's failure to make timely payments and was not reinstated due to Morlte's failure to return a "No Loss Statement" for the period from January 21, 1988, through February 4, 1988. Morlte argues that the binder was canceled on January 21, 1988, but that the policy was not since it was not issued until February 10, 1988 (the date it was countersigned by Certified Lloyds) and therefore was in effect at the time of the accident.
We find that the binder was canceled by Premium Finance, rather than the insurance policy. The binder issued to Morlte was a temporary insurance contract which was to be effective from November 30, 1987 to January 30, 1988. A binder does not constitute part of an insurance policy. LSA-R.S. 22:628; LSA-R.S. 22:631; Liberty Mut. Ins. Co. v. Ads, Inc., 357 So.2d 1360 (La.App. 4th Cir.1978). See also Ferrara v. Strain, 497 So.2d 1077 (La.App. 5th Cir.1986), writ denied, 501 So.2d 238 (La. 1987). At the time of the January 21, 1988 cancellation, the binder was the only contract in effect since the insurance policy was not issued until February 10, 1988. Therefore, the insurance policy was not canceled.
Certified Lloyds contends that "reinstatement" of Morlte's policy was conditioned upon his return of a signed "No Loss Statement" for the period from January 21, 1988 to February 4, 1988. Despite the fact that this statement was not returned to Certified Lloyds, Morlte's policy was issued on February 10, 1988, mailed to I & F and forwarded to Morlte on March 17, 1988. His premium was retained by Certified Lloyds until July 6, 1988.
LSA-R.S. 9:3550(H) requires the insurer to return the unearned premium on a canceled policy which has been financed no later than sixty days after the effective date of the cancellation. Certified Lloyds returned the unearned premium five and one-half months after cancellation. Subsection (G)(3) of that statute provides that the insurer is fully discharged from all liability under the insurance contract for any loss occurring subsequent to the effective date of the cancellation upon mailing of any unearned premium to the finance company. Since the accident occurred on June 6, 1988, and Certified Lloyds did not mail the unearned premium to Premium Finance until July 6, 1988, Certified Lloyds was not "fully discharged from all liability" at the time of the June 6 accident.[1]
*1124 Although the extent of Certified Lloyds' liability under LSA-R.S. 9:3550(G) is not clear from the statute and there is no jurisprudence construing the statute, we hold that Certified Lloyds is liable in these circumstances for Morlte's damages, as discussed below.
We hold that Certified Lloyds intentionally waived its right to avoid the contract since it issued Morlte's policy without having received the "No Loss Statement" and did not refund the unearned premium within sixty days. However, Certified Lloyds alleges that the policy was issued after cancellation and the premium refunded untimely because of an office move and holidays which caused disorganization and a backlog in work. Even so, Certified Lloyds is estopped from denying coverage since Morlte relied to his detriment upon the reasonable belief that he was insured by Certified Lloyds.
Morlte's detrimental reliance on the Certified Lloyds policy is clear. Morlte reasonably believed he was insured because his policy was issued, effective from November 30, 1987 to November 30, 1988, after his binder was canceled and after he had requested "reinstatement." Morlte relied to his detriment on this belief because criminal sanctions are imposed for failure to carry automobile liability insurance and because he would not have coverage for the damages incurred in the June 6 accident.
Certified Lloyds issued Morlte's policy with actual knowledge of its power of avoidance due to cancellation of the binder for nonpayment of premiums and nonreceipt of the "No Loss Statement." Therefore, it is estopped from avoiding liability for Morlte's claim on the June 6, 1988 accident. See Stovall v. Empire State Ins. Co., 215 La. 100, 39 So.2d 837 (1949); Quinones v. Life & Cas. Ins. Co. of Tennessee, 209 La. 76, 24 So.2d 270 (1945); Humphries v. Puritan Life Ins. Co., 311 So.2d 534 (La.App. 3d Cir.1975); Comment, 22 La.L.Rev. 202 (1961).

PREMIUM FINANCE'S LIABILITY
Finally, Certified Lloyds contends the trial court erred in holding Certified Lloyds liable rather than Premium Finance, since Premium Finance misled Morlte by continuing to accept payment on the premium note without receiving notice of reinstatement. We disagree.
A premium financing agreement is an agreement by which an insured or prospective insured promises to pay an insurance premium finance company the amount advanced under the agreement to an insurer in payment of premiums on an insurance contract. LSA-R.S. 9:3550(B)(2). Payments made to the finance company by the insured are not premium payments, they are loan payments. Therefore, while Morlte might have taken the acceptance of the monthly loan payments by Premium as an indication that his insurance was in force, such an assumption was not warranted. As between Morlte and Premium the payments were loan payments. Consequently, we cannot say that Premium misled Morlte by accepting his loan payments.
Moreover, Certified Lloyds alone was responsible for the issuance of Morlte's insurance policy and for the failure to refund the unearned premiums. We affirm the trial court's finding of no liability on the part of Premium Finance.

ATTORNEY FEES
Morlte has answered the appeal, asking for an award of attorney fees for this appeal. We find that plaintiff is entitled to an award of $750 to cover the cost of attorney services on appeal. LSA-R.S. 22:658; Bernard v. Merit Drilling Co., 434 So.2d 1282 (La.App. 3d Cir.1983).

*1125 CONCLUSION
Accordingly, for the reasons given, the judgment of the trial court is affirmed and amended to increase the award of attorney fees by $750, to a total of $3,250. Costs of this appeal are assessed to defendant-appellant, Certified Lloyds.
AFFIRMED AS AMENDED.
NOTES
[1] Certified Lloyds argues that failure by the insurer to timely refund the unearned premium does not extend the effective date of the policy; it merely creates a creditor-debtor relationship. Ardoin v. Audubon Ins. Co., 434 So.2d 627 (La. App. 3d Cir.1983). This argument applies to LSA-R.S. 22:636(D), which mandates a refund of the unearned premium "as soon as practicable." However, LSA-R.S. 9:3550, which is the applicable statute in this case, requires the refund to be made "as soon as reasonably possible but in no event shall the period for payment exceed sixty days after the effective date of cancellation." (Emphasis added.)