498 So.2d 1149 (1986)
Albert HIGGINBOTHAM, et ux., Plaintiffs-Appellants,
v.
NEW HAMPSHIRE INDEMNITY COMPANY, Defendant-Appellee.
No. 86-81.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1986.
Writ Denied February 6, 1987.
*1150 Lasivo & Weinstein, Patrick J. Mangan, Opelousas, for plaintiffs-appellants.
Brinkhaus & Fauzat, Jerry Falgoust, Opelousas, for defendant-appellee.
Before LABORDE, KNOLL and KING, JJ.
LABORDE, Judge.
This suit involves damages to the roof of a home in Washington, Louisiana owned by the plaintiffs, Albert and Daisy Higginbotham. The damage was due to wind and hail damage in either December of 1983 or February of 1984. The home was insured by the defendant, New Hampshire Indemnity Company, under a homeowners policy. From a judgment awarding plaintiffs $796.67, the amount previously tendered by defendant, plaintiffs appeal. Included in the appeal is a request for penalties and attorney fees under LSA-R.S. 22:658. We amend and affirm as amended.

FACTS
Plaintiffs and defendant are in dispute as to the exact date of the wind and hail damage to the plaintiffs' home. Nevertheless, damage was sustained by February 11, 1984, when the plaintiff notified the defendant's representative, Agency Management Corporation, (Agency) of the damage. On February 15, 1984, Calvin Folks, a property adjuster employed by Agency, went to the Higginbothams' home to investigate and determine the loss. He climbed a ladder and viewed the damaged roof. After descending from the roof he entered the residence to determine the water damage sustained inside the residence. He estimated the cost of repair and tendered a check for $693.80 less the $250.00 deductible leaving a net amount of $443.80. The defendant accepted this check, but later decided not to settle for this amount.
On March 15, 1984 Gerald Pitre, the branch manager of Agency, went out to view the home. After viewing the damage, Pitre forwarded an additional check for $210.00 to cover additional squares of shingles *1151 which Pitre felt were necessary to repair the roof.
On May 9, 1984, defendant received a letter from plaintiffs' attorney requesting $2,925.00 to replace the entire roof plus an additional $227.62 to replace other interior and exterior damage. Thereafter, defendant obtained an estimate to repair the roof for $770.00. With this additional information, defendant forwarded an additional $142.87 to replace indoor tiles and a power vent to bring the total of all money tendered to $796.67.
The issues at trial and on appeal are factual in nature. Concisely stated, the question is whether the insurer was correct in tendering money to have the roof repaired instead of having it replaced. Furthermore, what is the quantum, and was the refusal to pay for a new roof arbitrary so as to subject the defendant to penalties and attorney fees under LSA-R.S. 22:658.
A review of the record convinces us that there is manifest error in the trial court's conclusion. In his reasons for judgment the trial judge stated:
"The roof of the plaintiffs' home was damaged by a hailstorm in December, 1983. Their insurer, New Hampshire Indemnity Company, issued a series of checks totaling $796.67 for its repair after allowing for the $250. deductible under the policy. Contending that the failure of their insurer to pay the costs of replacing the entire roof and of repairing certain interior damages was arbitrary, the plaintiffs have instituted this suit for those costs and for penalties and attorney's fees.
Having considered the evidence and briefs of counsel, it is my opinion that the tendered amounts were sufficient for the repair of the damage caused by the hailstorm. Any later damage suffered by the plaintiffs because of the deterioration of the roof was a result of the failure of the plaintiffs to have the original damage repaired timely. Accordingly, the plaintiffs' demands for additional damages, penalties and attorney's fees will be denied."
The provision of the insurance policy which covers the company's liability in this situation states:
"c. This Company's liability for loss under this policy shall not exceed the smallest of the following amounts (1), (2), or (3):
(1) the limit of liability of this policy applicable to the damaged or destroyed building structure;
(2) the replacement cost of the building structure or any part thereof identical with such building structure on the same premises and intended for the same occupancy and use; or
(3) the amount actually and necessarily expended in repairing or replacing said building structure or any part thereof intended for the same occupancy and use."
The main dispute with respect to quantum is whether the roof can be repaired as urged by the defendant or whether the severity of the damages was such that the roof cannot be repaired and must be replaced. Three expert witnesses testified, two for the plaintiffs and one for the defendant.
Plaintiffs' first witness, Timothy Brown, a roofing contractor, testified that in his opinion the only proper way to repair the damage would be to tear off the existing roof, apply new felt, replace any broken or worn roof vents, install new valley metal, and nail down new 25 year shingles. His estimate for this job was $2,925.00.
Plaintiffs' second witness, Leon Guillory, testified that it is possible to spot repair a roof, but that in order to do the job and guarantee against leakage, the only proper way to repair the damage would be to replace the roof.
Defendant's witness, Nolan Lavergne, a sheet metal and roofing contractor for thirty-two years, testified that at first he was requested by Mrs. Higginbotham to give an estimate to replace the roof. He estimated that it would cost $1,981.25 to replace the roof and one ventomatic. Lavergne further testified that he was later contacted *1152 by Pitre to give an estimate to repair the roof. Lavergne testified that he could repair the roof for $770.00. This witness offered to perform the repairs in accordance with this estimate. Lavergne agreed to repair the roof in a workmanlike manner, but would not guarantee the roof from leaking. Upon further questioning Lavergne clarified his position by saying that he would guarantee that the shingles would stay, but would not guarantee that the roof would not leak. Lavergne was in agreement with the plaintiffs' expert witnesses that in order to guarantee that the roof would not leak, the entire roof would have to be replaced.
Our examination of the record convinces us that the plaintiffs cannot be fully compensated for their damage by repairing the roof. If testimony had been elicited which would guarantee against leaks, we would be more inclined to agree with the great discretion of the trial judge. Furthermore, since a number of years have passed since the initial damage, it would be impossible for us, as reviewers of the trial court's decision, to know whether repairs to the roof would have been sufficient to make the plaintiff whole. Nevertheless, we do not find the trial judge's decision so erroneous as to warrant payment for damages sustained after the storm where measures could have been taken to reasonably protect the premises from further deterioration. Brocato v. Underwriter's Ins. Co. of New York, 219 La. 495, 53 So.2d 246 (1951).
In Davis v. Roberts, 194 So.2d 772 (La. App. 1st Cir.1967), a similar situation occurred in which a building was damaged due to an automobile running into a wall. The court held that "the record fully supports the finding that plaintiffs cannot be adequately compensated for the damages to their building by the acceptance of repairs as offered by defendants' witness."
Davis, id. at 774, further held that the amount of damages awarded would be to put the plaintiff in the same position he was prior to the damage. Davis went on to hold that plaintiffs are not entitled to a new building. The amount of the award was therefore reduced by 1/3 to allow for depreciation.
In the instant case, the insurance policy does not provide for a deduction for depreciation. Therefore, the replacement cost of a new roof with the same type of composition shingles currently on the home is the proper method of valuation.
Plaintiffs' estimate of $2,925.00 to replace the roof is inflated. Plaintiffs' estimate used new seal tab shingles, which are more expensive than the composition type shingles currently on the home. Defendant's witnesses gave an estimate of $1,901.25 to replace the roof with shingles of the same type. We adopt this amount as the proper amount. Furthermore, we affirm the trial court's determination of payments of $58.50, $75.00 and $142.87 to repair damage to the living room, to replace the turbine and ceiling tile, and to replace the power vent. We do not give any further damages, agreeing with the trial judge, that plaintiff had a duty to mitigate their damages. Brocato, 53 So.2d at 251.
Accordingly, in adopting the view that plaintiffs' damages be computed on the cost of replacement, plaintiffs are entitled to recovery of $1,901.25 plus $276.37 for the power vent and other accessories less the $250.00 deductible leaving a recovery of $1,927.62. Inasmuch as the defendant has tendered to the plaintiffs $796.67, the plaintiffs are entitled to receive an additional $1,130.95.

PENALTIES AND ATTORNEY FEES
The second issue on appeal concerns the trial court's award of penalties and attorney's fees pursuant to LSA-R.S. 22:658.
In finding that the trial judge was manifestly erroneous, we also find that the insurer was arbitrary and capricious in not forwarding the amount necessary for the *1153 full replacement cost of the damage. Defendant was unable to find anyone to repair the roof and guarantee the repair against leakage. The testimony of all experts revealed that the proper standard of repair on the plaintiffs' roof would be to remove and replace the roof.
The applicable portion of LSA-R.S. 22:658 provides that insurers who arbitrarily, capriciously, or without probable cause fail to pay any claim within sixty days of proof of loss are liable for the amount of the loss as well as a penalty of 12% of "the total amount of the loss" and all reasonable attorney's fees. If the insurer has made a "partial payment or tender," the penalty is 12% of the difference between the amount tendered and the amount actually owed. LSA-R.S. 22:658.
On July 24, 1982, the defendant mailed plaintiffs a draft for $142.87. Included with the draft was a letter which stated "that a negotiation of these drafts will in no way prevent Mr. and Mrs. Higginbotham from pursuing any additional claim to which they feel they are entitled." This language indicates to us that a tender of this draft and previous drafts was unconditional. Since the defendant made an unconditional tender, penalties will not be assessed upon these amounts.
However, the additional damages awarded are subject to 12% penalties. The penalties on the disputed sum of $1,130.95 amount to $135.71 and will be added to the previous award of damages.
Additionally, because we feel that the insurer's actions were arbitrary and capricious in not tendering an amount sufficient to have the roof replaced, we award attorney's fees of $3,500.00 for work done on trial and on appeal.
For the above and foregoing reasons, the judgment of the district court in the sum of $796.67 is amended and increased $1,130.95, plus 12% penalties of $135.71, and a reasonable attorney fee of $3,500.00, for a total recovery of $5,563.33. All costs of this appeal are to be borne by the defendant-appellee.
AMENDED AND AFFIRMED.