773 So.2d 247 (2000)
Thomas B. BECNEL
v.
LAFAYETTE INSURANCE CO.
No. 99-CA-2966.
Court of Appeal of Louisiana, Fourth Circuit.
November 15, 2000.
Writ Denied February 9, 2001.
*248 George Pivach, II, Timothy Thriffiley, Pivach & Pivach, L.L.C., Belle Chasse, LA, Counsel for Plaintiff/Appellee.
Geoffrey Herr Longenecker, Longenecker & Associates, Ltd., Madisonville, LA, Counsel for Defendant/Appellant.
Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY III, and Judge DENNIS R. BAGNERIS, Sr.
BAGNERIS, Judge.
Defendant Lafayette Insurance Company appeals the judgment of the trial court awarding the sum of $11,048.34, plus penalties and attorney fees, to plaintiff Thomas Becnel.

FACTS AND PROCEDURAL HISTORY
On March 29, 1997, Mr. Becnel sued Lafayette Insurance Company ("Lafayette"), claiming that the roofs of his house and barn were damaged in a hail storm that passed through the Belle Chasse area. In May of 1997, Lafayette retained Kevin Perrier of Crawford and Company as a property damage adjuster, and sent him to Mr. Becnel's home to inspect the hail damage.
Mr. Perrier testified that he found widespread hail damage on both roofs, a solar panel that was cracked, and flashing that had been lifted by a dormer window. Mr. Perrier estimated that the interior water damage and solar panel would cost $2,284.06 to repair. Further, Mr. Perrier recommended that both roofs be replaced, and he estimated the cost for the replacement to be $9,091.87 for the dwelling roof, and $6,054.34 for the barn roof. Mr. Perrier submitted a replacement estimate to Lafayette for the roofs, solar panel, and the repair of the interior water damage. Mr. Perrier estimated that the repairs would cost $15,646.21. Mr. Perrier attached to the report twenty three photographs, evidencing the areas on the roofs which were hail damaged. Considering Mr. Becnel's $500.00 deductible, Mr. Perrier recommended payment to Mr. Becnel under his policy in the amount of $15,146.21.
After reviewing Mr. Perrier's report and pictures, Mr. Jay Daussin, Lafayette's Claim Supervisor, believed that the roof had sustained minor hail damage. Thereafter, Lafayette retained Harry Fourroux of Bruner Mallet Roofing Company to inspect Mr. Becnel's property for hail damage.
Mr. Fourroux testified that the roofs had been hit by hail, but that only ten shingles had been damaged on the house, and only three shingles had been damaged on the barn. Mr. Fourroux's report states that the "hail damage did not cause lost [sic] of granules and will not cut life of shingles." Mr. Fourroux submitted an estimate to Lafayette for the replacement of *249 the damaged shingles on the house and barn to cost $480.00.
In light of Mr. Fourroux's opinion, Lafayette refused to pay Mr. Becnel for the replacement of the roofs and instructed Mr. Perrier to make an unconditional tender of $2,360.06 to Mr. Becnel. This amount included Mr. Fourroux's estimate of $480.00 for the damaged shingles, $800.00 for the solar panel, and $1580.06 for the amount of the interior damage, less Mr. Becnel's $500.00 deductible.
Dissatisfied with Mr. Fourroux's opinion, Mr. Becnel decided to have another estimate to determine the extent of the hail damage. Thereafter, on June 10, 1999, Mr. Herman Diket, of Robertson and Siding, Inc., inspected Mr. Becnel's roofs. Mr. Diket testified that Mr. Becnel's roofs had widespread "splotches", which indicated areas where the hail had knocked off either fungus, or mildew, and some granules from the roofing shingles. Mr. Diket stated in his report that "the roof appears to have been damaged by hail. There are widespread sections of the roof that have granules missing that have been struck by hail." Mr. Diket also recommended that both roofs be replaced and estimated the cost for the replacement to be $6,210.00 for the dwelling roof, and $6,815.00 for the barn roof.
On July 16, 1997, Mr. Becnel's attorney sent a demand letter to Lafayette, along with a proof of loss, requesting that payment be made to Mr. Becnel in the amount of $15,646.21 within thirty days of receipt. Lafayette failed to make any additional payments. On October 31, 1999, Mr. Becnel filed a petition for damages against Lafayette for failure to replace both roofs, along with statutory penalties and attorney's fees for Lafayette's arbitrary and capricious refusal to settle the claim. After a one day trial, the trial court rendered judgment in favor of Mr. Becnel in the sum of $11,048.34, plus penalties pursuant to LSA-R.S. 22:658 in the sum of $1,104.83, plus additional penalties pursuant to LSA-R.S. 22:1220 in the sum of $3,500.00, plus legal interest thereon from date of judicial demand, until paid, and for all costs of these proceedings, subject to a credit of $497.40. Further, the court's judgment awarded Mr. Becnel reasonable attorney fees, pursuant to R.S. 22:658 and 22:1220.
Lafayette appeals, urging eight arguments: (1) that the trial court erred in finding that Mr. Becnel's roofs required replacement as a result of minor hail bruising; (2) that the trial court erred in accepting Mr. Diket as an expert witness; (3) that the trial court erred in finding it arbitrary and capricious and in awarding damages, penalties, and interest; (4) that the trial court erred in application of the replacement cost provision of the policy, rather than the actual cash value provision; (5) that the trial court erred in finding that the interior damage to the property was caused by the storm; (6) that the trial court erred in failing to apply the policy deductible to the claim; (7) that the trial court erred in awarding interest from date of judicial demand to the awards pursuant to La. R.S. 22:658 and 22:1220; and (8) that the punitive awards pursuant to La. R.S. 22:658 and 22:1220 are violative of due process and equal protection of the law.

DISCUSSION
Lafayette first contends that the trial judge was wrong in concluding that Mr. Becnel's roofs required replacement, citing Higginbotham v. New Hampshire Indem. Co., 498 So.2d 1149 (La.App. 3 Cir.1986), writ denied, 501 So.2d 236 (La. 1987). In Higginbotham, plaintiffs' roof sustained hail and wind damage. Their insurer sent a property adjuster to plaintiffs home to investigate and determine the loss. The property adjuster estimated the cost of repair and tendered a check for $693.80, less the $250.00 deductible, leaving a net amount of $443.80. Subsequently, the insurer's branch manager viewed the home and forwarded an additional check for $210.00 to cover additional shingles. *250 Dissatisfied with this amount, plaintiff had his attorney send the insurer a demand letter requesting $2,925.00 to replace the entire roof. The insurer obtained another estimate, which stated that the repair of the roof would cost approximately $770.00. The insurer then forwarded an additional $142.87 to bring the total of all money tendered to $796.67. At trial, three expert witnesses testified, two for the plaintiff and one for the insurer. Plaintiffs' first witness testified that, in his opinion, the only way to properly repair the damage is to replace the roof. Likewise, plaintiffs' second witness testified that, in order to guarantee against leakage, the only proper way to repair the damage would be to replace the roof. The insurer's witness testified that although he could repair the roof for $770.00, he would not guarantee that the roof would not leak. He further testified that in order to guarantee that the roof would not leak, the entire roof would have to be replaced.
In Higginbotham, the issue on appeal was whether the insurer was correct in tendering money to have the roof repaired instead of having it replaced. The trial court found that the tendered amounts were sufficient for the repair of the hail damage. However, the court of appeal amended the judgment and found that the plaintiffs were entitled to the replacement cost of a new roof with the same type of composition shingles. Additionally, the appellate court also found that the insurer was arbitrary and capricious in not providing the plaintiffs with the full replacement cost of the roof and awarded plaintiffs a 12% penalty and attorney's fees. We find that the Higginbotham case, cited by Lafayette, actually gives greater support to Mr. Becnel's case rather than Lafayette's.
In this case, four witnesses testified: two for Mr. Becnel and two for Lafayette. Mr. Becnel's first witness, Kevin Perrier, a property adjuster hired by Lafayette to inspect Mr. Becnel's roofs, testified that the hail damage was widespread on both roofs. He testified that hail bruising is "an indention into the shingle in which some aggregate is knocked off and that if a shingle is hail bruised, then it is hail damaged. Mr. Perrier further testified that from the hail bruised shingles he observed, there was a loss of granulation. Mr. Perrier recommended that Lafayette pay the full amount for the replacement of both roofs.
Mr. Becnel's second witness, Herman Diket, a roofing inspector, testified that there was widespread hail damage to Mr. Becnel's roofs. He testified that the shingles had lost granulation and, as a result, the life of the roofs would be shortened. Mr. Diket recommended that both roofs be replaced.
Lafayette's first witness, Harry Fourroux, a roofing estimator, testified that Mr. Becnel's roofs had hail damage. However, Mr. Fourroux testified that only thirteen shingles were damaged. Although Mr. Fourroux testified that the hail did not hurt the granular surface of the shingles, he did agree with the other three witnesses that if hail does knock the granular surface off of a shingle, then the life of the shingle would be shortened. Further, even though Mr. Fourroux did not observe any loss of granulation in the shingles, he testified that if a shingle had sustained a loss of granulation, he would recommend replacing the shingle. Mr. Fourroux recommended replacing the thirteen shingles damaged on the roofs.
Lafayette's second witness, Tim Marshall, a roofing inspector, testified that Mr. Becnel's entire roof sustained hail damage. Specifically, he testified:
...I went up and I looked at this roof and I could see hail bruises on most of the roof slopes on the house and most of the roofs slopes on the barn. I could see them in the field of the roof and I could see them on the ridges. A bruise is a rounded area that, where the shingle is indented and it feels like a soft spot like ona [sic] banana, a bruise or apple bruise, it feels soft and the granules, some have gone away from that *251 bruised area and exposed the asphalt and or the glass mat. And this was visible....
Further, Mr. Marshall testified that hail bruising on a roofing shingle "can evolve to have water through that top layer", thus constituting damage. Mr. Marshall testified that during his inspection, he found that the asphalt mat under the hail bruised shingles was indented and fractured. He also testified that there was a loss of granulation on the hail bruises themselves. Mr. Marshall estimated that 80-100 shingles were damaged on the barn and approximately 123 shingles were damaged on the house.
Faced with conflicting testimony, the trial court found more credence in the testimony of Mr. Perrier and Mr. Diket supporting the replacement of the entire roofs. A court of appeal may not set aside the trier of fact's findings unless it is manifestly erroneous or clearly wrong. Stobart v. State Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). When testimony conflicts, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). Under the circumstances presented by this case, we cannot say the trial court was clearly wrong in concluding, based on Mr. Perrier and Mr. Diket's testimony, that Mr. Becnel's roofs needed replacement.
Lafayette's second argument is that the trial court erred in tendering Mr. Diket as an expert witness. The requirements of expert testimony are set forth in La. C.E. art. 702. It states, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Formal education or training in a particular field is not always necessary to qualify as an expert in a particular field. Experience alone is sufficient. Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073, 1079 citing Aaron v. Bankers and Shippers Ins. Co. of New York, 475 So.2d 379 (La.App. 1 Cir.1985); Adams v. Chevron U.S.A., Inc., 589 So.2d 1219 (La.App. 4 Cir.1991), writ denied, 592 So.2d 414, 415 (La.1992). Further, a trial judge has wide discretion in determining whether to allow a witness to testify as an expert, and his judgment will not be disturbed by an appellate court unless it is clearly erroneous. Id.
In this case, the trial judge qualified Mr. Diket as an expert witness in evaluating hail damage to roofs and in estimating the cost of repair and replacement of that hail damage. Mr. Diket testified that he had been in the roofing business for over twenty years, and that he had been with Robertson Roofing for the past eight years. He testified that he has worked as a roofer; has built houses; and has installed shingle roofs, sling roofs, flat roofs, and metal roofs. Mr. Diket also testified that he has installed commercial roofing for many shopping centers, including Lakeside Shopping Center. Mr. Diket testified that he has conducted inspections for insurance companies, including State Farm, All State, and Firemans Fund. Mr. Diket further testified that he has inspected over one hundred roofs a year for Robertson Roofing. In light of the evidence presented, we find that the trial court was within its discretion in qualifying Mr. Diket, based on his experience, as an expert in evaluating hail damage to roofs and in estimating the cost of repair and replacement of that hail damage.
Lafayette's third argument on appeal is that the trial court erred in finding it arbitrary and capricious and in awarding damages, penalties, and interest under La. R.S. 22:658 and 22:1220.
La. R.S. 22:658 provides, in pertinent part:

*252 A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
* * *
(4) All insurers shall make a written offer to settle any property damage claim within thirty days after receipt of satisfactory proofs of loss of that claim.
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1), or within thirty days after written agreement or settlement as provided in R.S. 22:658(A)(2) when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.
Thus, in order to prevail under La. R.S. 22:658, the claimant must establish that the insurer received satisfactory proof of loss, failed to pay the claim within 30 days of proof of loss, and that its failure to pay the claim was arbitrary, capricious, or without probable cause.
On May 8, 1997, Lafayette's property adjuster, Mr. Perrier, inspected the hail damage and verified that the roofs had sustained widespread hail damage, requiring the replacement of both roofs. On May 12, 1997, Lafayette received Mr. Perrier's report recommending that Lafayette pay $15,146.21 for Mr. Becnel's claim: $11,548.34 immediately, and $3597.87 upon completion of the roofing job. Being dissatisfied with Mr. Perrier's estimate, Lafayette decided to have Mr. Becnel's property inspected by Mr. Fourroux. Relying on Mr. Fourroux's opinion that only thirteen shingles were damaged, on June 4, 1997, Lafayette sent an unconditional check to Mr. Becnel for $2,360.06. Despite the fact that Mr. Becnel hired a third inspector, Mr. Diket, who also recommended the replacement of the roofs, Lafayette refused to pay any additional money for the hail damaged roofs. In finding that the denial of Mr. Becnel's claim was arbitrary and capricious, the court noted in its reasons for judgment that:
Unlike the circumstances where an insured obtains an estimate for the repair of a loss covered under a policy of insurance and the insurer subsequently obtains its estimate of the repair of the loss, the defendant choose [sic] to ignore the appraisal of plaintiff's loss by its own appraiser. Defendant then obtained another appraisal which was substantially lower than its original appraiser and decided to in effect deny plaintiff's claim for damage to his roof. After receiving another estimate of repairs from plaintiff together with a Proof of Loss, defendant still choose [sic] to deny plaintiff's claim. The Court finds that the actions of the defendant were arbitrary capricious and without probable cause.... Further, the defendant's course of action in totaling [sic] ignoring the appraisals of its own appraiser and the subsequent estimate of repair presented by the plaintiff constitutes bad faith dealings with its insured.
The determination that an insurer's handling of a claim is arbitrary and capricious is a factual finding which may not be *253 disturbed unless manifestly erroneous. Calogero v. Safeway Ins. Co. of Louisiana, 99-1625 (La.1/19/00), 753 So.2d 170. Our review of the record in this matter discloses no manifest error in the lower court's determination that Lafayette's handling of Ms. Becnel's claim was arbitrary and capricious and therefore warranted the assessment of penalties and attorney's fees under La. R.S. 22:658.
La. R.S. 22:1220 provides, in relevant part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
* * *
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
As for damages pursuant to La. R.S. 22:1220, the statute imposes upon an insurer a duty of good faith and fair dealing toward its insured, including the duty to adjust claims fairly and promptly. The insured is entitled to recover any general and special damages occasioned by the insurer's breach of "failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." La. R.S. 22:1220(B)(5). In addition to recovering general and special damages, the insured may recover penalties under La. R.S. 22:1220(C). In Brinston v. Automotive Cas. Ins. Co., 96-1982 (La. App. 4 Cir. 12/3/97), 703 So.2d 813, this court held that if an insurer commits any one or more of the acts enumerated in Section 1220(B), penalties could be imposed without a showing of damages.
As stated previously, the trial court found that Lafayette's failure to pay Mr. Becnel's claim, even after a third appraisal was done estimating that the roofs needed replacement, was arbitrary and capricious. Implicit in that finding was the conclusion that Lafayette failed to pay the claim within sixty days after Mr. Becnel had furnished Lafayette with satisfactory proof of loss. Because the record supports this conclusion, and because this was a breach of one of the enumerated duties imposed on the insurer by La. R.S. 22:1220(B), we find no error in the trial court's judgment awarding penalties to Mr. Becnel.
Lafayette's fourth argument on appeal is that the trial court erred in awarding Mr. Becnel replacement cost for the two roofs rather than the actual cash value of the roofs. However, after a review of the evidence, we agree with Mr. Becnel that the trial court's award of $11,048.34, subject to a credit of $497.40, appears to award Mr. Becnel the actual cash value for replacing the two roofs rather than the replacement value.
*254 First, Mr. Daussin, a claims adjuster for Lafayette, testified in his deposition that Mr. Becnel "is to be paid actual cash value up front. That is what we owe him. He does not get any additional money until such time that repair or replacement is complete." Second, Mr. Perrier testified that his estimate for replacement included a depreciation because Mr. Becnel was only entitled to recover the actual cash value until the roofs are actually replaced. Mr. Perrier's appraisal report of May 8, 1997, stated that: (1) the replacement cost for the dwelling and barn was $15,646.21, (2) the depreciation on both roofs was $3,597.87, and (3) the actual cash value for both roofs was $12,048.34. Third, Mr. Diket testified that his estimate for the replacement cost of both roofs was $13,025,00. After examining the evidence in the record, we conclude that the trial court was not clearly wrong in its award of $11,048.34, subject to a credit of $497.40.
Lafayette's fifth argument on appeal is that the trial court erred in finding that the interior damage to Mr. Becnel's property was caused by the storm. Lafayette alleges that the trial court should have granted it a credit for $2,306.06 because there was uncontradicted evidence that the interior damage was falsely claimed and unrelated to the hail storm. We find no merit to this argument.
Mr. Becnel testified that the water damage was not there prior to the hailstorm and that he noticed the water damage after three days of the storm. Mr. Perrier testified that there was interior damage to Mr. Becnel's house and that it could have happened from the wind driven rain. Pursuant to Mr. Perrier's recommendations, Lafayette paid the entire cost for repairing the interior water damage. Because the $2,360.06 was for the solar panels and interior water damage, we find that the trial court was correct in failing to credit Lafayette with this amount in determining the amount due on the roofs.
Lafayette's sixth argument on appeal is that the trial court erred in failing to apply the policy deductible to the claim. The evidence reflects that Lafayette had already deducted the $500.00 from the $2,360.06 it tendered to Mr. Becnel. As stated in Mr. Perrier's June 9, 1997 letter to Mr. Becnel, "Enclosed please find the check for minimum roof repairs as estimated by Bruner Mallet and for interior water damage as a result of wind driven rain in the amount of $2,360.06. This amount includes application of the deductible." Accordingly, this assignment is without merit.
Lafayette's seventh argument on appeal is that the trial court erred in awarding interest from date of judicial demand to the awards pursuant to La. R.S. 22:658 and 22:1220, citing Holt v. Aetna Cas. & Sur. Co., 28,450 (La.App. 2 Cir. 9/3/96), 680 So.2d 117, writ denied, 96-2515 (La.12/6/96), 684 So.2d 937, writ denied, 96-2523 (La.12/6/96), 684 So.2d 938. The judgment provided that legal interest on the penalties accrued from date of judicial demand rather than on the date of legal judgment, March 10, 1999.
In Holt, the court found that interest on penalties accrued from date of judgment. Specifically, the court stated that "`[u]ntill a judgment is rendered awarding attorney fees or penalties, a claim for those damages is unliquidated, that is, it is a claim that has not been determined either as to liability or damages'". Holt, 680 So.2d at 133 quoting Williams v. Louisiana Indemnity Co., 26,887 (La.App. 2 Cir. 6/21/95), 658 So.2d 739. Mr. Becnel acknowledges that the Holt decision correctly sets forth the law on prejudgment interest on penalties and attorney's fees. Accordingly, we amend the trial court's judgment to award interest on penalties from date of judgment.
Lafayette's eight argument on appeal is that the punitive awards pursuant to La. R.S. 22:658 and La. R.S. 22:1220, violate Lafayette's due process and equal protection rights. This argument is without merit.
*255 This Court has held that the constitutionality of a statute must first be questioned in the trial court and that the plea of unconstitutionality must be specifically pled to be considered by the trial court. Levron v. State Through Dept. of Health & Hospitals, 94-2094 (La.App. 4 Cir. 4/24/96), 673 So.2d 279, 290 writ denied, 96-1684 (La.10/4/96), 679 So.2d 1387, writ denied, 96-1723 (La.10/4/96), 679 So.2d 1391. Specifically, this Court stated that:
a long-standing jurisprudential rule mandates that a statute must first be questioned in the trial court, not the appellate courts, and the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. Pleadings allowed in civil actions are petitions, exceptions, written motions and answers. Therefore, when the unconstitutionality of a statute is specifically pled, the claim must be raised in a petition, an exception, a motion, or an answer. It cannot be raised in a memorandum, opposition or brief as those documents do not constitute pleadings. (citations omitted).
Id. citing Vallo v. Gayle Oil Co., Inc., 94-1238 (La.11/30/94), 646 So.2d 859, 864-865.
In this case, Lafayette made a claim in its appellate brief that the statutes were unconstitutional. Relying on the principles stated above, we find that Lafayette's attempt at addressing the unconstitutionality of the statutes is insufficient.
Accordingly, for the reasons given, we amend the judgment of the trial court to award interest on penalties pursuant to La. R.S. 22:658 and La. R.S. 22:1220 from date of judgment. In all other respects, the trial court judgment is affirmed.
AMENDED AND AFFIRMED AS AMENDED.